The next case is L.M.P. v. School Board of Broward County. Mr. Piper is here for the record. Good afternoon, Your Honors, or good morning, I'm sorry. My name is David Piper. Together with Neal Cossie, we represent the appellants in these consolidated cases. In full candor to the Court, I am the father of the triplets in the L.M.P. case. The issue here is longstanding. I think that's an understatement in this case. It first started just before the triplets turned three. They are now about to turn 17 years old. I'm sorry to interrupt, but I don't want to speak on behalf of my colleagues, except that I know that from my past experience with them, they're always well-prepared. I think we know the facts. Let me ask you, though, one of the things that's not clear to me is when you have this predetermination, what is it specifically that you're saying the predetermination is? Because I think it can be construed as predetermination that there was not going to be continued the 30 hours of homebound ABA, or it could be that there's no ABA therapies at all. I mean, there are different things that you could be referring to, and I want to make sure that we're all in agreement as to what it is that you're saying was predetermined. I think you may have turned off the microphone by accident. Your Honor, the policy itself is the only way policy by the school board, and what they say is we have a policy where any method, what we call a method of instruction, is never put on an IEP unless a parent can prove to the school, to the exclusion of any other intervention that it might come up with, that it is the only way that each child could learn. So it's a global policy that they say applies not just to ABA, but to every intervention. So under RL, the playing field is supposed to be level in the IEP process. It's supposed to be a collaborative process where parents and the school enter the IEP meetings with an open mind, and RL teaches that the school board has to have an open mind at every stage of the process, and under their only way policy, their mind is closed from the very get-go. What they say is if we call something a method, you're not going to get it on an IEP unless you can meet this impossible standard, and we say the standard's impossible because we did do a review and discovery, it was exactly in this case, of a thousand other students random. Not one got ABA. There was expert testimony at the trial that the picture exchange communication system is a scientifically validated ABA-based intervention strategy to teach autistic children. Was there a contrary opinion or any evidence to contradict that finding in the record? That narrow finding, no, Your Honor. And so that's a finding of fact? I mean, we apply a clearly erroneous standard to that finding of fact. That in isolation, Your Honor, was found and it wasn't disputed. But what we say here is we were not asking for a picture exchange system. That is not what we ever asked for in the case. You were asking for an ABA-based intervention strategy? We were asking for, the way we phrased it was we were asking for what the two providers were rendering, BAI and Dr. Lubin, and they used a verbal-based model. In other words, they were trying to teach children to talk. And this picture exchange system gives up on language and teaches children to speak symbolically. So that's a completely different program. And what we're saying is when they entered the room, that was never on the table. They had already predetermined that, no, you were not going to get that unless you showed us to the exclusion of any other intervention, they say, that it could provide faith. And their own expert testified, Dr. Cabot, that PECS was not an enforceable program, was not written as an enforceable program, that the children were verbal, that they had not even completed their evaluations to see what their preferred mode of communication were, and really deferred that as a completely optional use to the schoolroom teacher. So in other words, the parents were cut completely out of the decision. The decisions were going to be made solely by the schoolroom teacher. But there were meetings, though, right, that were scheduled to listen to the concerns of the parents? Well, there were. And, in fact, the board accommodated the parents by postponing one meeting upon their request,  Well, there were meetings. There were meetings. But there was never any consideration given by the school board ever approving the children's programs. And you'll see that. There was no, you'll see that when we first, when we first approached the school for placement, they said, no, ABA, you can't get that under any circumstances. And then throughout the administrative hearing, the same thing, no, it's not on the table. Mr. Piper, let me, let me ask you a question. I bear the scars of having been a parent of a child who had disputes with the school board about services. So I understand what your life experiences have been in this. But you keep on talking about they wouldn't do ABA under any circumstances. And that's what they were closed minds about. If I understand it correctly, ABA does not stand for the American Bar Association. It stands for Applied Behavioral Analysis. It is not a technique itself. It is a scientific discipline that is concerned with developing techniques. So when you, when you say that they wouldn't let you do any ABA under any circumstances, that's, that's not itself a technique. It is a scientific discipline, is it not? You've turned the mic off again. I think I have it back on. What we said was that there was no meaningful consideration given to the requests that the parents made during the IEP meetings. Well, that's not a, you're basically saying it's our way or the highway. What the school board wants, school board gets, what the parents get is not relevant. Is that what you're saying? Well, what we're saying is they never considered it. They came into the meeting with a closed mind. And at no point did they consider any of the programs. You walked out with a technique that is based on the ABA scientific discipline. Did you not? We did not. Because there was nothing for that to be enforceable. Their own expert testified, Ms. Williams testified at trial, that none of the IEPs for any of the four children in any of the cases required ABA. Dr. Cavanagh... But when you say required ABA, what do you mean? ABA is not itself a technique. ABA is a scientific discipline, is it not? Correct. None of the programs required the teacher to even provide any ABA program. Because PECS was completely discretionary. And we never asked for PECS. We asked for the programs like BAI, like Dr. Lubin had been providing, be considered. And it's undisputed that it was never considered. They never sent the 1415 letter. And what's curious, Your Honors, is even in the many years that these cases have been pending, the school board never said, Oh, by the way, plaintiffs, guess what? Your claim is moved because look on the IEP. There's an enforceable program of ABA. So we were taken a bit by surprise by the ruling because the school board itself never took that position. What they said was, look, it's a method. It's up to the schoolroom teacher whether to use it or not. Parent, you can't require that on the IEP. So what we're saying is we have a right to be listened to at every stage of the process with an open mind. When we're asking for an intervention, hear the Partington, Sundberg, and Dr. Lubin's method to be included on their IEPs. And it's undisputed that no consideration was ever given to that. And that's predetermination. Now, we said the predetermination, how they did that, that's consistent with their general overall policy in the system where they say, look, anything we call a method of instruction doesn't need to be put on an IEP. And if you look at the district judge's holdings, they're very compelling. ABA is the only way scientifically validated to provide an education to children, that it can be a related service, that it can be special education, that even if it's just a method of instruction, parents have a right at all stages of the process to be listened to with an open mind. There was never any... We had a two-day trial. No witness from the school board ever testified they considered the parents' request to continue Dr. Lubin's program or Dr. Garcia's program. None at all. Had they done that, they would have been required under section 14-15 to send a prior notice of refusal. So the school board was required to consider those programs, but it wasn't bound by that request, as long as you're providing a meaningful opportunity to participate in the decision process, right? So, in other words, we have to look at this record and determine whether or not there's enough evidence in the record to establish that the school board permitted the parents to participate in the decision-making process, which is what the statute requires, right? Correct, Your Honor. The standard is, did they have an open mind at every stage of the proceedings? And the simple answer is no. From the very get-go, under this only-way policy, their mind's closed. Your argument is, we can go to this record, and if we find that there is insufficient evidence that the school board had an open mind, then we should reverse. That you should reverse, and based on the record, that you should afford the remedies requested. One of those is compensatory education for DP and KP. They were put on notice three years prior to the bench trial with Dr. Lubin's affidavit, where Dr. Lubin had testified that he was concentrating on communication, but it was tragic how far behind the children had fallen. Let me stop you for just a second, and I'm sorry, but since you only have a limited amount of time, I just want to make sure we address everything. And I'm just a little confused. I think you said your position is, even with respect to PECS, that wasn't put on the IEP. Is that correct? It was put only on the initial one, but it was put as an assistive technology service with no description of what it was. And when I asked the expert witness at the administrative hearing, what is PECS, is it mandatory under the IEP? She said, no, it's up to the classroom teacher. And I asked her, as an expert reading these reports, can you tell if any behavioral interventions are being approved? And she said, no, I can't tell. I mean, because I'm looking at it right now, and it says assistive technology needs, yes, no. Yes is checked, and it says picture, symbol, communication system, among other things. And then on the other one, it says assistive technology needs, check all that apply. And then it's got checked, augmentative communication. And written in, it says picture, exchange, communication system. We don't know what that means, Your Honor. And the expert didn't know. The expert said it was up to the schoolroom teacher to determine what the communication needs were of the students, which should have been done. The placement is supposed to be based on the IEP not in the reverse. And you'll see that in the RL language. So what they're saying is, we're deferring to the schoolroom teacher whether to use this system, and to what extent it's to be used. It could have been used for one minute. It could have been used not at all. It certainly didn't put the parents on notice of any ABA or anything to challenge. We never did get a notice from them about the ABA. So the only way policy is a closed mind at every stage of the process, at the very beginning. And they can't even articulate a standard on how you can satisfy it when we ask them. We said, what can we show you objectively as a parent to ever satisfy that? And the 30B6 witness said, I don't know. How do you train staff on this standard? We don't. Are any of these people trained on ABA? No. So they've articulated this impossible standard which demonstrates that they never in our particular cases gave any consideration. And that their minds were shut from the very start of the process. All right, I think we have your argument, Mr. Piper. You've reserved some time for rebuttal. We'll hear from Mr. Burke. Good morning and may it please the Court. My name is Michael Burke. With me is Hudson Gill and the School Board's General Counsel Barbara Myrick. Your Honor, I know that you are familiar with the record. However, I wanted to bring up just two quick points. In this particular case, there are of course four plaintiffs. One of them, AC, is pursuing this claim under the Individual Disability Education Act without any administrative exhaustion. There was never any challenge to any IEP for AC. With respect to the triplets, the only due process hearing that was ever requested and to which there was any administrative exhaustion was with respect to a temporary six-month IEP which was not implemented because number one, the parent didn't attend the second IEP meeting. Number two, they chose not to enroll the children in the school and it was never even implemented. They subsequently did enroll the children in the school, the Broward schools. They received individual education plans each school year and never did challenge a single one of those. I think that is important that the Court understand that procedural background. Let me ask you this question. If I go to the record in this case, where in the record will I find evidence that the Board had an open mind and might possibly be swayed by the parent's opinions in support of the IEP provisions that they thought were necessary for their children? The best evidence of that will be found in the transcript of the only IEP meeting that the parents attended, the January 5, 2004 meeting. There you will see that what occurred is at that meeting the parent brought a court reporter, brought Mr. Garcia, who was providing this 30 hours of one-on-one discrete trial testing. The name of the program was a particular model that started to be discussed, and then you will see that what actually occurs is that the father interrupts the exchange that's about to take place between Mr. Garcia and the school board members of the IEP team, cuts him off, tells him not to discuss it any further, and the meeting is concluded, and then it is continued for another date that the parents choose not to attend. And then an IEP is developed at that meeting because it was a long first meeting. You will see substantial evidence in that record of an attempt to consider the needs. This case is a lot about... So the verbal-based applied behavior analysis that he wanted his children to participate in. So where is the evidence that the board actually considered that? The board employees, there was some discussion of it at the IEP meeting, and they were in the process of discussing it when the meeting, as I said, ended the way I have described to you. When the second meeting came back to deal with it again, they chose not to attend or to present anything further. They just... What happened, frankly, if you look at this carefully, is that there was another case decided by this court. It's cited in the briefs. It was a stay-put case, which is another provision of this alphabet suit called the IDEA. In that case, which is cited in the records, basically what the litigation strategy here was, or the plaintiff was, to get beyond the children's third birthday and to argue that a recently adopted settlement with the Children's Diagnostic Center in Fort Lauderdale, the early intervention provider in Broward County, would be required to be carried over to the school district. That's why you'll see that the meetings get carried out at the request of the parents beyond the children's third birthday, a day beyond it, January 5. What the parents wanted was to keep that in place, make that stay-put, give us 30 hours of discrete trial testing, one-on-one, at home for each of the triplets. If I go to the record now, I'll find evidence in the record that the school board considered that request. You will see evidence that it was discussed? He's saying it was rejected outright, that the school board had a closed mind and wasn't even going to consider that at all. If I go to the record, will I find evidence that the school board gave that? You will find evidence that it was discussed, as I say at the administrative hearing, and the principal argument that the school board had in opposition to it was, you're asking for 30 hours one-on-one at home. It's an extremely restrictive environment for a preschool child. You're asking that the children effectively be educated at home without any medical need for that. You will hear that it is not well thought of by the school board, but it is discussed at that administrative hearing. In that regard, it is considered and rejected. This is the January 5, 2004 hearing? That is, Your Honor. The meeting. It's an IEP meeting, yes, Your Honor. There was a court reporter present? It was. The father brought the... Is the transcript in the record? It is, Your Honor. The evidence in the case is that the school board provides ABA-based interventions and methodologies to autistic children consistently, and through its curriculum. It has a nationally recognized curriculum it utilizes called TEACH and STAR. It utilizes the picture exchange communication system that is discussed by the District Court Judge and specifically discussed in the IEP. This isn't a case where these children were being denied ABA-based interventions and procedures. The argument, getting back to Judge Rosenbaum's very first question, and this was pursued by the District Court Judge early on at the trial, was tell me what your claim is. You don't have administrative exhaustion. You're not making any kind of substantive challenge to whether or not these individual education plans were reasonably calculated to provide an education for the children. What is your claim? The claim, as presented, was that the school board has predetermined not to include ABA that acronym, on its individual education plans. The testimony in that regard was that the school board generally doesn't want to include the acronym ABA because it doesn't tell anybody anything. It is, as has been pointed out, a science. There's numerous interventions that are utilized to provide that scientific-based method of education. But what it does is it actually provides those and the reason why it doesn't want to limit that is that it provides the basis for the instructor to provide those interventions in the classroom, discrete trial testing, picture exchange, communication system, and others as they are effective for the education of the children. If specific things are noted in the IEP, those specifics have to be provided to the exclusion of others until that gets changed. Let me ask you something. Is it necessarily to the exclusion of others? By the time it takes for that, it would be to the exclusion. If it said, for example, BAI, let's say it said five hours a week or something. It would not exclude others. I would agree with that. For that five hours, it would have to be provided. If that was not going forward well, if it was not meeting the goals and objectives of the IEP, it would have to be continued until there could be an agreement reached between the parents and the school or there'd be a due process to handle that. My understanding of the plaintiff's concern is that there's no way for them to enforce that any specific type of or any type of ABA be administered because it's not in the IEPs. I think your position is, well, ABA therapy is being administered all the time, the Bowdoin school. That's what they do. There are examples of how the children are taken aside and taught in groups of one or two or three and it's basically DTTI. It seems like there is a difference between having it in the IEP and therefore making it in the IEP. I guess maybe you could speak to that a little bit. Sure. What I would say in that regard is that these cases are very fact specific. That's why there is this administrative process that hopefully takes place before it reaches the district court and this court. The school board's general position is it wants as much flexibility as it can on the IEP. That's for sure. However, if you can show us that there really is a need for that to achieve these goals, it will be included. Indeed, there is in this case picture exchange communication system included on the IEP. Moreover... I'm sorry to interrupt again, but do you agree with the plaintiff's position that that is not enforceable? We do not. That is absolutely enforceable. It is on the individual education plan. The parent can monitor the classroom. The parent can call and talk to the teacher. What about the plaintiff's position that Dr. Cabot took the opposite position? Well, I think what she said was her interpretation of it was that it was something that could be provided. We would disagree with that, Your Honor. That was certainly an issue that the court never even addressed. The district court judge never got a chance to address that issue and hear from the school board folks on that. One of the things that I would say and go back to is as you frame the issue just now, that's really not the way the issue was framed for the district court judge. The way the issue was framed is there's a procedural violation because they will not consider placing the broad acronym, not some specific matter, but the broad acronym of ABA on the individual education plan. And Judge Maher heard this case and he left a lot of things open. But the one thing that he did observe from the record, as has been pointed out, it was undisputed that there was on this IEP a specific ABA-based intervention that was included on it. And so the notion that that never happens is dispelled by the undisputed evidence in this case. To address a couple of other issues, Judge Maher has referred to it as a lack of standing. But I think it could also be interpreted as the evidence itself shows that the policy that is being advocated doesn't actually exist. Because the one IEP to which there was administrative exhaustion, there is in fact the ABA-based intervention specifically included on it and we do contend that's enforceable. And there was never any claim made that that was the assertion either before the due process hearing or at the trial itself. It was a much broader-based claim. Indeed, in AC's case, there never was even a single due process hearing. Just to address what the plaintiffs asked for, because you never know what your honors are thinking as I watch you, they of course asked for you to decide the entire case in this 15-30 minute period. We would urge that if we're wrong, if everything that we have said is inaccurate and not correct, that at the worst case scenario, for the school board the worst case, this would go back to the district court judge to continue with his work and not for this court to simply go in and award all kinds of compensation for therapy and private school tuition that took place years later without any due process challenge ever being made to any of those IEPs. I believe I've exhausted my time. If there's no further questions, we would ask the court to affirm the district court's judgment. I think you can see he worked very, very hard on this case. Thank you for your time. Thank you, Mr. Burt and Mr. Piper. You have reserved some time. Thank you, Your Honor. Judge Wilson, you had a question of where you should look in the record to see if they considered the parent's request. I would urge the court to look at the transcript of the administrative hearing. In particular, and I'm sorry I don't have the page in line, I think it's in the brief. Ms. Lieberman, who was leading the IEP team meeting, was any consideration ever given to continuing these children's programs? She answered no. I would urge the court to look to that direction. Except when you look at that, my recollection is having looked at that, that it appears that later the witnesses who testified in the way that you're describing clarified that what they were talking about, this was during the same hearing, what they were talking about was continuing the 30 hours of homebound ABA therapies. Am I misunderstanding? Do you take a different position? Well, what they said was that the ABA at that level was not available in the school. We never requested specifically that it had to be a homebound program. They kind of turned it into that. And the children were getting it outside of the home, too. It wasn't a location issue for us. But you look at Mary Stone, a psychologist, who testified, no, we don't have a program inside the school that can accommodate it either. So both ways they didn't consider it. I know my time is short. On remand, Your Honor, this case has been pending for quite some time. We have asked for compensatory education and we've briefed that issue fully. The school board filed no response whatsoever. And I would encourage the court to look to the Todd D. v. Andrews case. In that case, this court, at oral argument, was asked for the first time by counsel for Todd to award compensatory education and didn't plead it separately or argue it in the district court. This court found the case was tragic, awarded compensatory education, entitlement, and remanded for the court to decide the parameters of that. We suggest that you award it. There's no necessity for remand in this case because the parameters have been fully set out in Dr. Lubin's deposition. Second, we ask that damages be awarded. And we're aware of the Swint case, which says under Rule 52, if a judge makes an infirm ruling generally, you remand for fact-finding unless the issues become one of law. And damages became one of law in this case because the only opposition, and the school board had the bills for 3 years to the award of the plaintiff's damages was exhaustion of administrative remedies. That was an argument that the court had decided and had rejected. So there's no way that this court could find a parent acted unreasonably by going through a gesture the court had already concluded was futile. So based on the record in this case, there's ample evidence to overrule and also to award compensatory damages and also damages for the reimbursement and for an injunction stopping this policy. Thank you, Your Honors. Court will be in recess until 9 o'clock tomorrow morning.